# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | |
|---|---|
| LARRY ALLEN, | * |
| Plaintiff, | * |
| vs. | * CV 212-023 |
| STEVEN C. LAND; and CITY OF HAZLEHURST, | * |
| Defendants. | * |

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendants Steven Land and the City of Hazlehurst (the "City"). See Dkt. No. 14. For the reasons stated below, Defendants' motion is **GRANTED**.

## BACKGROUND

Plaintiff Larry Allen, a 62 year-old African American male, has been a police officer with the City of Hazlehurst Police Department since 1984. Dkt. No. 14, Ex. 1, ¶ 2. On March 6, 2008, Allen filed his first EEOC charge ("First Charge") contending that, since 1992, he had been subjected to disparate treatment regarding job responsibilities and

requirements based on his age and race. Dkt. No. 14, Ex. 1, ¶ 5.

The First Charge complained that Allen had been denied a take-home vehicle, keys to Chief Land's office, comparable lunch times/breaks, comparable wages, and access to his subordinates' disciplinary hearings, whereas a younger Caucasian officer was not denied any of those things. Dkt. No. 14, Ex. 1, ¶ 6. Geoffrey Parker, an investigator with the police department, was the younger Caucasian officer identified as a comparator. Dkt. No. 14, Ex. 1, ¶ 7. Parker, as an investigator, had different job responsibilities than Allen. Dkt. No. 14, Ex. 1, ¶ 8. Allen was actually offered the position of investigator before Parker, but Allen turned the offer down and suggested Parker for the position. Dkt. No. 29, 60:12-23. Of the employees in the department, only Parker received a take-home vehicle, keys to the Chief's office, longer breaks, and access to disciplinary meetings. Dkt. No. 29, 18:3-15, 19:2-21, 21:14-16.

According to Allen, within days of filing his First Charge in March 2008, Chief Land directed that Allen work the evening shift rather than the day shift. Dkt. No. 29, 15:14-25, 16:1-20. Allen testified that Chief Land did not give any reason for why he wanted Allen to work the evening shift. Dkt. No. 29, 16:15-17.

AO 72A
(Rev. 8/82)

On July 17, 2009, the EEOC issued a Notice of Right to Sue on the First Charge. Dkt. No. 14, Ex. 1, ¶ 14. The Notice of Right to Sue noted that "Your lawsuit under Title VII or the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice: or your right to sue based on this charge will be lost." Dkt. No. 29, Ex. D-2 (emphasis in original). Allen failed to file suit within ninety days of receiving the Notice. Dkt. No. 29, 25:6-15. Allen claims that no suit was filed because his former attorney neglected to do so despite Allen's impression that a suit would indeed be filed. See Dkt. No. 29, 25:11-24 (The "right to sue [for the First Charge] was given over to an attorney who did not file.").

Over a year later, on August 12, 2010, Allen contends that all 911 calls were dispatched to Allen alone during his shifts, whereas other shifts had two officers to respond to 911 calls. Dkt. No. 14, Ex. 1, ¶ 15. Chief Land sent a memorandum that directed that Randy Roberson, the School Security Officer, stay at the school during the day shift and that 911 calls should be dispatched to the other officer. Dkt. No. 29, 29:19-22. The effect of the memorandum was that Allen was the sole officer to respond to 911 calls during the shift. Dkt. No. 29, 30:1-5. Allen contends that, as a result, he did not have back-up on potentially high-risk calls. Dkt. No. 14, Ex. 1, ¶ 16. Allen's testimony indicates that ordinarily another officer would also

AO 72A
(Rev. 8/82)

be dispatched on certain calls and would show up at the scene even while the policy was in effect. Dkt. No. 29, 31:18-21. However, as a result of the policy change, in certain circumstances, there was a possibility that Allen would not have another officer on the scene unless he called for backup. Dkt. No. 29, 31:16-25.

Allen described an incident where he was called about a domestic dispute involving a mother and son. Dkt. No. 29, 32:2-7. When Allen arrived "it was resolved," but no other officer automatically arrived on the scene. Dkt. No. 29, 32:2-11. Allen did not call another office because he "assumed another one was coming" because "[t]hey always come" because "they listen to the radio and the dispatcher dispatches them on there." Dkt. No. 29, 32:2-13. Officer Roberson, the SRO, informed Allen later that "he didn't hear it because he was in the school and his radio was turned off." Dkt. No. 29, 32:17-19. Chief Land and Parker were "out of town" when the call was dispatched. Dkt. No. 29, 32:24-25.

Later that same day, Allen responded to an alarm call, which is when an alarm goes off for an unknown reason. Dkt. No. 29, 54:16-20. Such calls have the potential of being high risk, but once Allen arrived, it was clear this incident was not high risk. Dkt. No. 29, 54:24-25, 55:1-3. Once Allen arrived, "[t]he alarm was off and they had come and they reset the

AO 72A
(Rev. 8/82)

alarm." Dkt. No. 29, 54:22-23. No other officer arrived at the scene. Dkt. No. 29, 54:12-15.

On December 21, 2010, Allen submitted a second EEOC charge ("Second Charge") alleging race and age discrimination as a result of the August 2010 dispatch change. Dkt. No. 29, Ex. D-3. The Second Charge indicated that Allen believed he had been discriminated against because of his age and race. Dkt. No. 1, Ex. A. The copies of the Second Charge contained in the record are blurry and difficult to read. Dkt. No. 29, Ex. D-3. However, the Second Charge states:

> I was hired by the above named department on March 27, 1984 as a Patrolman. I met the expectations of the job and over the duration of my employment I received many promotions. On approximately August 12, 2010, the 911 Center was directed by Chief of Police Steven Land to dispatch every call to me during my shift. I am the only Police Officer who must respond to every call alone during my shift. Other shifts have two rotating officers that respond to 911 calls. On August 18, 2010, I was dispatched to a high risk call and received no back up. On August 19, 2010, I submitted a letter to Chief Land to inform him of the risk involved with responding to calls alone. I remain the only officer in the department that must respond to every call alone during my shift.

Dkt. No. 1, Ex. A. The Second Charge further states that "[n]o reasons were given for the disparate treatment described above" and concludes with the statement that:

> I believe that I have been discriminated against because of my race, African American, in violation of Title VII of the Civil Rights Act of 1984 as amended. I also believe I have been discriminated against

because of my age (60) in violation of the Age
Discrimination in Employment Act of 1987, as amended.

Dkt. No. 1, Ex. A. On October 31, 2011, the EEOC issued a Notice of Right to Sue on the Second Charge directing Plaintiff to file suit within ninety days. On January 27, 2012, Allen filed suit against Chief Land and the City. See Dkt. No. 1.

Although not mentioned in either charge, the record indicates that Allen believes he has been discriminated against in other ways. On April 19, 2010, Chief Land went before the Hazlehurst City Council and requested that the Council demote Allen and remove his rank. Dkt. No. 29, 51:23-25, 52:1-12. The Council did not act on that request. Dkt. No. 29, 52:1-12. Additionally, Parker was appointed Deputy Chief of Police, which was a position Allen desired. Dkt. No. 29, 57:15-25. Allen's counsel, without citation, indicates that this occurred in January 2013. See Dkt. No. 32.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first

6

identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

In the present case, Allen's counsel has failed to respond to almost all of Defendants' arguments. Counsel's initial brief consists of a document written in first person and repeatedly refers to documents outside the record. See Dkt. No. 20. "[T]his Court is not tasked with developing a party's summary judgment arguments for it." Doe v. City of Demopolis, 799 F. Supp. 2d 1300, 1312 n.23 (N.D. Ala. 2011).

**DISCUSSION**

**I. Title VII Discrimination Claim for the Incidents Described in the First Charge**

As noted above, Allen received the First Charge's Notice of Right to Sue on July 17, 2009 and failed to file suit within ninety days. Dkt. No. 29, 25:1-12. Pursuant to 42 U.S.C. § 2000e-5(f)(1), a plaintiff must file a civil complaint within ninety days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). The Plaintiff has the burden of

7

establishing that he met the ninety-day filing requirement. Green v. Union Foundry Co., 281 F.3d 1229, 1234 (11th Cir. 2002). If he fails to meet his burden, summary judgment is warranted in favor of defendants. Id.

Allen admits that he failed to file within the ninety days. None of his submissions in opposition to summary judgment advance any argument regarding the ninety-day requirement. See Dkt. Nos. 20, 32. During his deposition, Allen stated that his former attorney neglected to file suit despite Allen's wishes that he do so. However, Allen's current counsel has not cited any caselaw nor advanced any argument for why an attorney's omission would excuse the ninety-day requirement. Accordingly, Allen cannot pursue a Title VII action for the conduct contained in the First Charge.

## II. Title VII Retaliation Claim

The Second Charge Allen filed contained no mention of the shift-change which allegedly occurred a few days following Allen's March 2008 EEOC charge. Dkt. No. 29, 27:17-25, 28:1-16, Ex. D-3. The Second Charge only mentioned the August 2010 change in dispatch. Dkt. No. 14, Ex. 1, ¶ 15; Dkt. No. 29, 27:24-25, 28:1-16. Allen only checked the boxes for race and age discrimination on the charge form; he did not indicate that he felt he had been retaliated against or include any facts

suggesting he had been retaliated against for engaging in protected conduct. Dkt. No. 29, Ex. D-3.

"Prior to filing a Title VII action, . . . a plaintiff must first file a charge of discrimination with the EEOC." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279 (11th Cir. 2004). "The purpose of this exhaustion requirement is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." Id. (citations and internal alterations omitted). "In light of the purpose of the EEOC exhaustion requirement, . . . a 'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id. at 1280 (citing Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2000)). "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate." Id. at 1279 (citing Wu v. Thomas, 863 F.2d 1543, 1547 (11th Cir. 1989)). However, "the scope of an EEOC complaint should not be strictly interpreted." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970).

9

The Second Charge contains no mention of the March 2008 shift change which allegedly occurred shortly after Allen filed the First Charge. An investigation of those circumstances could not be reasonably expected to grow out of a charge that only mentions events during August 2010. Accordingly, Allen failed to satisfy the exhaustion requirement for that claim.

Even if the Second Charge had included the shift change, the Second Charge was filed on December 21, 2010, over two and a half years after the shift change. "Title VII requires employees to file a charge with the EEOC within 180 days of the alleged unlawful employment activity." Freeman v. City of Riverdale, 330 F. App'x 863, 866 (11th Cir. 2009) (citing 42 U.S.C. § 2000e-5(e)(1)).

To the extent Allen claims that the August 2010 dispatch change was retaliatory, that claim clearly fails on the merits. The only protected conduct occurring prior to the dispatch change Allen has identified is the filing of the First Charge in March 2008. An interim of over two years is far too long for Allen to establish the required causal connection between the two events. See Curtis v. Broward Cnty., 292 F. App'x 882, 885 (11th Cir. 2008) (temporal gap of nine months was insufficient to establish causal connection); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007) ("A three to four

month disparity between statutorily protected expression and the adverse employment action is not enough").

### III. Title VII Discrimination Claim for the Incidents Described in the Second Charge, Section 1983 Equal Protection Claims

Allen's disparate treatment claim based on the August 2010 dispatch change does not suffer from the procedural defects of his other Title VII claims; Allen filed an EEOC charge within 180 days of the conduct, he included the relevant facts within that charge, and filed suit within ninety days of receiving his Notice of Right to Sue. This claim, however, lacks substantive merit.

The proper limitations period for Allen's § 1983 equal protection claim is two years. Presnell v. Paulding Cnty., Ga., 454 F. App'x 763, 767 (11th Cir. 2011); Leal v. Ga. Dep't of Corrs., 254 F.3d 1276, 1279 (11th Cir. 2001); Williams v. City of Atlanta, 794 F.2d 624, 626 (11th Cir. 1986). Allen's counsel has failed to advance any argument that any of the complained of conduct constituted a continuing violation or advance any other argument regarding the statute of limitations. See Dkt. Nos. 20, 32. The present suit was filed on January 27, 2012. See Dkt. No. 1. Thus, any action taken prior to January 27, 2010 would be time-barred under § 1983.

The record contains indications of several actions occurring after that date: the August 2010 shift change, an

April 2010 failed attempt by Chief Land to have Allen demoted, and Parker's promotion to Deputy Chief. See Dkt. No. 29, 51:23-25, 52:1-12, 57:15-18. Of those actions, only the shift change was mentioned in Allen's First and Second Charges with the EEOC.

Employment discrimination claims brought under the Equal Protection Clause and § 1983 apply the same standard of proof and analytical framework utilized in claims under Title VII. Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009); Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997). To establish a prima facie case, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was subject to adverse employment action, (3) his employer treated similarly situated employees who are not members of the plaintiff's class more favorably, and (4) that he was qualified for the job or job benefit at issue. Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 (11th Cir. 2000). "If the plaintiff satisfies these elements, then the defendant must show a legitimate, non-discriminatory reason for its employment action." Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). "Defendant's burden of production in rebutting the *prima facie* case is exceedingly light." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1529 (11th Cir. 1992) (citations omitted). If the defendant meets this "exceedingly light" burden, then the plaintiff must prove that the reason provided by the defendant

AO 72A
(Rev. 8/82)

is a pretext for unlawful discrimination." Burke-Fowler., 447 F.3d at 1323.

Allen faces a variety of challenges in surviving this burden-shifting framework. First, with regards to the shift change and the unsuccessful demotion request, it is doubtful that either of those actions rises to the level of an adverse employment action in a discrimination case. Second, while Allen subjectively believes that he was more qualified than Parker, Allen has not identified anything other than the mere fact that he has worked longer for the police department to support that proposition. Dkt. No. 29, 58:2-9. Allen's employment file contains a number of complaints regarding his performance and there is no indication that Parker encountered similar difficulties. See Dkt. No. 29, D-6, D-7, D-8, D-9, D-10, D-11. Plaintiff has utterly failed to bring forth any evidence of pretext to counter the multiple legitimate, nondiscriminatory reasons shown by the Defendants. Accordingly, Allen cannot survive summary judgment on his federal claims.

**IV. Plaintiff's Intentional Infliction of Emotional Distress Claim**

This claim, too, cannot survive. To reach a jury on a claim of intentional infliction of emotional distress, a plaintiff must show evidence of four elements: (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and

13

outrageous, (3) the conduct caused the plaintiff to suffer emotional distress, (4) the distress was severe. <u>Hill v. City of Fort Valley</u>, 251 Ga.App. 615, 616 (2001). The evidence in this case falls woefully shy of establishing the severe distress and outrageous acts necessary to reach a jury.

## CONCLUSION

For the reasons stated above, Defendants' motion is **GRANTED**. The Clerk of Court is directed to close the case and enter the appropriate judgment.

**SO ORDERED**, this 6th day of September, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)